**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cynthia J Reynolds,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　　Defendant. | No. CV-22-00404-PHX-SMB<br><br>**ORDER** |

Plaintiff challenges the denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") by Defendant, the Commissioner of the Social Security Administration ("Commissioner" or "Defendant"). Plaintiff exhausted administrative remedies and filed a Complaint seeking judicial review of the denial. (Doc. 1.) The Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g). Having reviewed Plaintiff's Opening Brief (Doc. 12, "Pl. Br."), Defendant's Answering Brief (Doc. 14, "Def. Br."), Plaintiff's Reply (Doc. 15, "Reply"), and the Administrative Record (Doc. 11, "AR."), the Court hereby reverses the Commissioner's unfavorable decision and remands for additional proceedings.

**I.　　THE SEQUENTIAL EVALUATION PROCESS AND JUDICIAL REVIEW**

To determine whether a claimant is disabled for purposes of the Act, the Administrative Law Judge ("ALJ") follows a five-step process. *E.g.*, 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th

Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial, gainful work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in disqualifying work, she is not disabled. *Id*. If she is not engaged in such work, the analysis proceeds to step two, where the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id*. § 404.1520(a)(4)(ii). If the claimant has no such impairment, she is not disabled. *Id*. If she does, the analysis proceeds to step three, where the ALJ considers whether the claimant's impairment or combination of impairments meets or is medically equivalent to an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id*. § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to step four,[1] where the ALJ determines whether the claimant is still capable of performing her past relevant work. *Id*. § 404.1520(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled. *Id*. If she cannot, the analysis proceeds to the fifth and final step, where the ALJ determines if the claimant can perform any other work in the national economy based on her RFC, age, education, and work experience. *Id*. § 404.1520(a)(4)(v). If the claimant cannot perform any other work, she is disabled. *Id*.

The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance . . . It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations and citations omitted). In determining whether substantial evidence supports a decision, the court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quotations and citations omitted). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

---

[1] The "residual functional capacity is the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

1 *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

## II.   PROCEDURAL HISTORY

Plaintiff filed an application for DIB on January 7, 2019 alleging disability beginning June 3, 2018. (AR. at 188.) Her applications were denied at the initial and reconsideration phases of administrative review (AR. at 100-104, 108-116), and Plaintiff timely requested a hearing (AR. at 120-21). ALJ Myriam Fernandez-Rice held a telephonic hearing on November 3, 2020, at which the Plaintiff and a vocational expert testified. (AR. at 35-54.) ALJ Fernandez-Rice issued an unfavorable decision on January 6, 2021. (AR. at 14-32.)

In that decision, the ALJ concluded Plaintiff had not engaged in disqualifying work activity and that she suffered from medically-determinable, severe impairments including degenerative disc disease, depression, and anxiety. (AR. at 20.) The ALJ concluded Plaintiff's impairments did not meet or medically equal the criteria of any listed impairment (AR. at 20-22), and that Plaintiff retained the ability to perform medium work with occasional kneeling (AR. at 22). The ALJ further limited Plaintiff to "simple, repetitive, and routine tasks, with only occasional interaction with the public." (AR. at 22.) The ALJ concluded Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR. at 23.) The ALJ found the prior administrative medical findings at the reconsideration level to be "mostly persuasive, as the record supported the limitation to less than a full range of medium work, though the claimant's recognition of a need to seek crisis care was more consistent with a mild limitation in adapting and managing herself." (AR. at 25.) The ALJ found the opinion of Plaintiff's treating mental health provider, NP Luis Fong, to be unpersuasive. (AR. at 25.) The ALJ asserted, "Mr. Fong noted that the claimant had very significant physical limitations and would miss multiple days of work per month because of her impairments. (Exhibit 14F). These findings are not supported by the claimant's physical examination results, and are inconsistent with

her treatment record as a whole." (AR. at 25.) The ALJ concluded Plaintiff could perform other jobs existing in significant numbers in the national economy at step five, and that she is not disabled. (AR. at 26-27.)

Plaintiff appealed, but her request for review was denied by the Social Security Appeals Council on January 21, 2022. (AR. at 1-3.) Plaintiff then filed this civil action. (Doc. 1.)

### III. DISCUSSION

Plaintiff raises two issues: (1) whether the ALJ erred by failing to properly assess the opinions of NP Fong and the prior administrative medical findings of L. Mogrovejo, Ph.D. (Pl. Br. at 11-20); and (2) whether the ALJ cited clear, convincing reasons for rejecting Plaintiff's symptom testimony (Pl. Br. at 20-23). The Court agrees the ALJ failed to properly assess NP Fong's assessment and provide legally sufficient reasons for discrediting Plaintiff's symptom testimony. For the reasons explained further below, the Court finds that any error with respect to Dr. Mogrovejo's opinion is harmless. The Court remands for additional proceedings.

**A.  The ALJ erred by rejecting NP Fong's assessment without explaining her consideration of the regulatory factors or providing reasons supported by substantial evidence.**

For claims filed on or after March 27, 2017, federal regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must consider the overall persuasiveness of a medical opinion using the regulatory factors and articulate her analysis of the two "most important factors," *i.e.*, supportability and consistency. *Id.* § 404.1520c(b)(2). The supportability factor accounts for "the objective medical evidence and supporting explanations presented by a medical source[ ]to support [the] medical opinion[] . . . ." *Id.* § 404.1520c(c)(1). Regarding consistency, "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the

evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. § 404.1520c(c)(2)

The Ninth Circuit has held these regulations abrogate (for claims filed on or after March 27, 2017) the Circuit's longstanding test "requiring an ALJ to provide 'specific and legitimate'" reasons for discrediting the contradicted opinion of an examining or treating physician. *Woods v. Kijakazi*, 32 F.4th 785, 787, 789 (9th Cir. 2022). "Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. at 787. The Ninth Circuit explained, however,

> Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must "articulate ... how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings, *id*. § 404.1520c(b)(2).

*Id*. at 792.

In August 2019, NP Luis Fong—Plaintiff's primary mental health provider—completed a "Work Capacity Evaluation (Mental)[,]" listing Plaintiff's mental health diagnoses, medications, side effects, and functional limitations. (AR. at 985-87.) He noted Plaintiff suffers from bipolar disorder, anxiety, and posttraumatic stress disorder, and that she has a "fair" prognosis. (AR. at 985.) He concluded Plaintiff suffered several "Category III" and "Category IV" limitations in different categories of mental functioning (understanding/memory, sustained concentration/memory, social interaction, and adaptation) reflecting that Plaintiff would be off-task for at least 10% of an eight-hour workday when performing those activities. (AR. at 985-87.) He concluded Plaintiff would be off-task from 25-30% overall, and that she would likely miss three days of work every month. (AR. at 987.) He concluded Plaintiff would be unable to sustain full-time, competitive work for at least six continuous months. (AR. at 987.)

In the decision, the ALJ stated the following regarding NP Fong's assessment:

> The undersigned considered the work capacity evaluation from Luis Fong, DNP, but found it unpersuasive. Mr. Fong noted that the claimant had very significant physical limitations and would miss multiple days of work per month because of her impairments. (Exhibit 14F). These findings are not supported by the claimant's physical examination results, and are inconsistent with her treatment record as a whole.

(AR. at 25.)

Plaintiff argues, "The ALJ's entire analysis constitutes harmful legal error because Dr. Fong is claimant's psychiatric provider and his opinion was based on her mental capacity to complete work-related activities." (Pl Br. at 13.)[2] Plaintiff asserts the ALJ further erred by failing to explain how she considered the regulatory factors, and by failing to provide any true analysis of NP Fong's opinion. (Pl. Br. at 13.) Alternatively, Plaintiff argues the ALJ's summary of the mental health evidence was "less than accurate," citing positive mental status findings and noting that the overall record supports the conclusion that Plaintiff's symptoms remained severe. (Pl. Br. at 14-16.) Plaintiff notes that the ALJ cited an entire 132-page exhibit to support her conclusion Plaintiff's symptoms improved with therapy after February 2020 (Pl. Br. at 15), and that the ALJ disregarded "objective measures of [Plaintiff's] depression and anxiety symptoms throughout the record[,]" such as the PHQ-9 and GAD-7 scores reflected in her treatment notes. (Pl. Br. at 17.)

Defendant responds that the ALJ's reference to NP Fong's "physical" rather than "mental" limitations is a typographical error, as the ALJ appropriately noted Dr. Fong's conclusion that Plaintiff would miss multiple days of work per month. (Def. Br. at 10.) Defendant argues that the ALJ concluded NP Fong's assessment was unsupported by his examination results and the overall treatment record, such as normal mental status findings, which goes to the regulatory factors. (Def. Br. at 11-13.) Defendant also notes the ALJ's conclusion that Plaintiff's condition improved with treatment. (Def. Br. at 13.) Defendant argues the ALJ accurately characterized the 132-page exhibit at 21F,

---

[2] The Court notes Mr. Fong is a psychiatric nurse practitioner (AR. at 1236), which does not change the analysis.

- 6 -

purportedly showing Plaintiff's condition improved. (Def. Br. at 14.)

The Court agrees with Plaintiff. The ALJ inaccurately characterized NP Fong's assessment and failed to provide any true analysis of it in the decision. *Woods*, 32 F.4th at 792 ("The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id*. § 404.1520c(b)(2).") The ALJ's conclusion NP Fong's "findings are not supported by the claimant's physical examination results, and are inconsistent with her treatment record as a whole[,]" (AR. at 25), aside from being facially inaccurate, amounts to a bald conclusion. The ALJ asserted conclusions addressing each factor, but she did not explain how she considered those factors. *See id*. The ALJ must provide an "*explanation* supported by substantial evidence." *Id*. (emphasis added). The Court accepts it can draw reasonable inferences from the record when they are there to be drawn. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("[W]e are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion.") Indeed, this might have been appropriate had the ALJ properly described NP Fong's opinion as mental rather than physical, or if the ALJ mistakenly characterized the assessment as physical, but still cited some specific evidence of Plaintiff's mental health symptoms belying the opinion in her discussion of that opinion. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (an error is harmless if "the agency's path may reasonably be discerned . . . .") (internal quotations and citations omitted). Such would reinforce Defendant's view that the ALJ's mistake was a harmless typographical error. (Def. Br. at 10.) But where the ALJ mischaracterizes the assessment and omits any direct citation to the record supporting her conclusions regarding the regulatory factors, this is an overreach. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) ("[W]e may not take a general finding—an unspecified conflict between Claimant's testimony about daily activities and her reports to doctors—and comb the administrative record to find specific conflicts.") The Court finds the current record is insufficient. Additional proceedings are

warranted for the ALJ to properly address NP Fong's opinion using the regulatory factors with direct citations to the supporting evidence.[3]

**B.      The ALJ erred by rejecting Plaintiff's symptom testimony.**

When evaluating a claimant's symptom testimony, the ALJ must first assess "whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir.1991)). If the claimant presents this evidence, the ALJ may discredit the claimant's testimony only by citing "specific, clear and convincing reasons for doing so." *Id.* (quotations and citations omitted). Importantly, "[o]nce the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citations omitted). Instead, "[a]n ALJ may consider a range of factors in assessing credibility, including '(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a

---

[3] The Court finds harmless any error with respect to the prior administrative medical findings of L. Mogrovejo, Ph.D. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (harmless errors are "inconsequential to the ultimate nondisability determination.") (internal quotations and citations omitted). While the ALJ did not cite clear reasons for rejecting any portion of that opinion, she still appeared to account for the limitations from that opinion in her RFC. On October 15, 2019, Dr. Mogrovejo concluded Plaintiff "is able to persist at tasks that can be learned in one to three months on the job with reduced public contact." (AR. at 90, 94-95.) The ALJ's mental RFC finding consists of "simple, repetitive, and routine tasks, with only occasional interaction with the public." (AR. at 22.) The RFC appears to accommodate the limitations Dr. Mogrovejo assigned. Moreover, the various "moderate" limitations in specific functional categories that Plaintiff cites do not constitute Dr. Mogrovejo's RFC assessment. (Pl. Br. at 19-20.) Dr. Mogrovejo's form states that "the actual mental [RFC] assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion." (AR. at 93.) The form also states that "[a]ny other assessment information deemed appropriate may be recorded in the MRFC – Additional Explanation text box." (AR. at 93.) While Dr. Mogrovejo did not complete the individual narrative discussion sections for each functional category, his RFC can be found in the additional explanation text box. (AR. at 94-95.)

prescribed course of treatment; and (3) the claimant's daily activities.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quotations and citations omitted).

In the decision, the ALJ concluded Plaintiff's "mental impairments caused limitations, but not to the level she alleged." (AR. at 24.) First, the ALJ noted Plaintiff's "voluntary admission" to the hospital for depression with psychosis symptoms in June 2018, citing benign mental status findings and her overall stable condition upon discharge. (AR. at 24.) The ALJ further acknowledged that while Plaintiff "received regular therapy treatment in 2018 and 2019," and those records indicated "variable levels of depression and anxiety," that Plaintiff "consistently presented with normal findings on her mental status examination." (AR. at 24.) The ALJ summarized treatment notes from 2019 indicating Plaintiff was still exhibiting symptoms, but improving, and that while Plaintiff stopped attending therapy in October 2019 to take care of her grandchild, she felt physically exhausted from these responsibilities and experienced increased stress. (AR. at 24.) The ALJ noted Plaintiff's symptoms, including suicidal ideation, were increasing in February 2020 but, citing a 132-page exhibit at 21F, that "later therapy records from 2020 show that her symptoms improved with treatment." (AR. at 25.) The ALJ reiterated in support of her RFC findings that Plaintiff's "symptoms improved with compliance to medications and therapy, and that her worsening symptoms corresponded to periods where she either was not taking her medication or stopped going to therapy." (AR. at 25.)

To begin, substantial evidence does not support the conclusion that Plaintiff experienced sustained improvement in her mental health throughout the relevant period. While Plaintiff, at times, reported feeling better overall, or that some symptoms such as mood swings had improved, those same notes reflect she continued to experience other symptoms (AR. at 574, 608, 619), and later notes show that Plaintiff's improvement was short-lived. In November 2018, for instance, she reported temporary improvement in symptoms, but that they "revert[ed] back." (AR. at 608.) She reported some improvement with the addition of a medication, but daily tearfulness, worsening mood swings,

irritability, low motivation, "anxiety and racing thoughts around nighttime," and a feeling of "shaking on the inside[.]" (AR. at 608-609.) In December, Plaintiff also reported temporary improvement in symptoms followed by a reversion back. (AR. at 599.) She reported improved sleep but worsening mood swings, daily tearfulness, low motivation, anxiety, and racing thoughts. (AR. at 599-600.) That same month, she reported the medications were working "ok," but also tearfully recalled an episode where she lashed out at her grandson. (AR. at 411-12, 591.) In January 2019, she reported the medications were working ok, but that her anxiety was still "10/10." (AR. at 395.) In June 2019, Plaintiff reported "doing well" and "keeping active," (AR. at 923), but by December, her symptoms were exacerbated. She reported increased stress and anxiety due to the pressures of taking care of her grandchildren. (AR. at 1148.) She was described as highly anxious, agitated, reactive, disagreeable, and tearful. (AR. at 1154.) Her worsening symptoms continued in February 2020, when she reported increased suicidal ideation, anxiety, shaking, feeling overwhelmed, and neglecting her hygiene. (AR. at 1167.) The provider noted during her mental status examination that Plaintiff exhibited tremors, a frustrated and hostile attitude, an impaired concentration and attention span, impaired memory, an agitated, anxious, and frustrated mood, tearful and labile affect, and disorganized and scattered thought content. (AR. at 1168-69.) "As we have emphasized while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Such is the case here.

To the extent the ALJ relied on Plaintiff's non-compliance—in this case, her decision to quit therapy for a few brief periods—the Court agrees with Plaintiff that the ALJ should have considered possible reasons for that decision. Soc. Sec. Ruling ("SSR") 16-3p, 2017 WL 5180304, at *9 (S.S.A. Oct. 25, 2017) ("We will not find an individual's

symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.") Although Plaintiff may have benefited from continued therapy during those periods, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir.1989)).

The Court also agrees with Plaintiff that "the record clearly supports that the added responsibility in caring for her grandchildren had a direct impact on the exacerbation of her mental health symptoms therefore supporting, rather than detracting from, her allegations[.]" (Pl. Br. at 22, citing AR. at 44, 1153-54, 1192.) In February 2020, as noted *supra*, when Plaintiff was caring for her grandchildren, she reported that her suicidal ideation had returned, she was neglecting her hygiene, and she exhibited many significant mental status findings upon examination. (AR. at 1167-69, 1171.) Plaintiff was "trembling throughout the session, would sit hunched over in her chair avoiding eye contact and when eye contact was made, it would be a hard stare." (AR. at 1171.) She reported to her case manager and behavioral health technician that she did not have time to follow-up due to caring for four grandchildren, and that she felt depressed and without support. (AR. at 1163.) NP Fong noted Plaintiff's symptoms were tied to these psychosocial stressors. (AR. at 1178.) Plaintiff reported increased anxiety, racing thoughts, difficulty sleeping, and thoughts of self-harm in May 2020, when she was "keeping [her grandchild] so many hours a day[.]" (AR. at 1230.) In June 2020, Plaintiff reported improvement because a neighbor was helping with childcare. (AR. at 1241.) In September, she reported increased depression and anxiety symptoms with recent family strife. (AR. at 1249.) At the hearing, she testified that caring for her grandchildren caused increased anxiety, crying, and irritability, and that the neighbor had been watching them full-time for the past few months. (AR. at 44-45.) Because Plaintiff's testimony regarding these activities is consistent with the record, Plaintiff's childcare activities are not a

sufficient basis to discredit her. *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) ("Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination.") While Plaintiff, at times, reported engaging in childcare activities for long hours each day, it is clear this led to a significant exacerbation of her mental health symptoms. Consequently, the Court finds the ALJ failed to cite clear, convincing reasons supported by substantial evidence for discrediting Plaintiff's symptom testimony.

**C.     Remedy.**

When the Court finds harmful legal error it "ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)). This is "the proper course, except in rare circumstances . . . ." *Treichler*, 775 F.3d at 1099 (quotations omitted). To remand for payment of benefits, the Court must find "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020 (citations omitted). Even if all three prongs are satisfied, however, remand for additional proceedings may still be appropriate where "even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021.

The Court finds additional proceedings would serve the useful purpose of further factual development regarding Plaintiff's current mental health limitations, especially considering the improved situation regarding childcare. *Leon*, 880 F.3d at 1047 ("Remand is also useful here because 'the presentation of further evidence . . . may well prove enlightening in light of the passage of time,' . . . .") (quotation and citations omitted). Additional proceedings would also afford the ALJ an opportunity to

substantively address NP Fong's opinion, which is warranted considering the benign mental status findings the ALJ cited in the record.

**IT IS ORDERED** that the January 6, 2021 decision of the ALJ is reversed and remanded for additional proceedings.

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly and terminate this action.

Dated this 26th day of September, 2023.

Honorable Susan M. Brnovich
United States District Judge